GRAFFLIN *v.* NEVASSA PHOSPHATE CO. OF NEW YORK, (DUNCAN, Petitioner.)

*(Circuit Court, D. Maryland.* July 5, 1888.)

1. DOWER—IN GUANO ISLAND—ACT CONG. AUG. 18, 1856.
     *Held,* that the act of congress approved August 18, 1856, authorizing protection to be given to citizens of the United States who may discover deposits of guano, (Rev. St. tit. 72, "Guano Islands,") does not confer upon the discoverer a title to the land of the island such as will entitle his widow to dower therein as against a purchaser from him, although she has not joined in his assignment, or executed a release.
2. SAME—NATURE OF RIGHT GRANTED DISCOVERER.
     *Held,* that the right recognized in the discoverer and his assigns by the act of congress is not a title as proprietor of the soil, but merely a commercial privilege, by which the enterprise of obtaining the guano discovered on such islands is protected, so that it may be obtained for shipment to the United States, or elsewhere, if permitted.

*(Syllabus by the Court.)*

In the Matter of the Petition of Isabella Duncan, widow of Capt. Peter Duncan, to have her dower in the Island of Nevassa assigned to her, or to be allowed a gross sum as a reasonable commutation of the same.

*D. Eldridge Monroe* and *Victor Smith,* for petitioner.

*S. T. Wallis, contra.*

MORRIS, J.    This petition is filed in a case in which, upon the application of certain stockholders, the court has appointed receivers of the

property of the Nevassa Phosphate Company of New York, for the purpose of paying its debts and administering its property for the benefit of its creditors and stockholders. The petitioner alleges that in 1857, her late husband, Peter Duncan, discovered a deposit of guano on an island called "Nevassa" in the Caribbean sea, not within the lawful jurisdiction of any government, and took possession thereof, and filed his claim thereto with the state department of the United States, in accordance with the act of congress approved August 18, 1856, (11 St. at Large, p. 119,) and afterwards furnished to the state department evidence of his discovery, occupation, and peaceable possession, whereupon his assignee was declared to be entitled to the rights intended to be secured by said act of congress. That after remaining in possession of said island from September 19, 1857, to November 18, 1857, which was during the coverture of the petitioner, her said husband conveyed his title and interest in said island to one Cooper, and by mesne assignments the title to said island has become vested in the Nevassa Phosphate Company of New York, which now holds it under the title of her late husband. That petitioner never joined in any deed of said island, or in manner released her dower therein; and she claims that under the said act of congress the United States has assumed jurisdiction of said island, and that a heritable estate therein vested in her husband, and that, upon his death, which occurred in the year 1875, she became entitled to her dower therein. To this petition the receivers have demurred, and contend that the interest of Peter Duncan in the island of Nevassa was not such as would give his widow any right of dower, and that there was no government having territorial jurisdiction of the island to whose laws the petitioner could appeal in support of her alleged right.

Looking to the language and purpose of the act of congress, which is entitled "An act to authorize protection to be given to citizens of the United States who may discover deposits of guano," we find nothing which indicates that it was the intention of congress to claim title to or to recognize in the discoverer, who was to be protected in the exclusive occupancy of the island for the purpose of obtaining and shipping guano therefrom, any title to the land; on the contrary, the provisions of the law entirely negative any idea that such islands were in any sense to become part of the territorial domain of the United States. It is clear that the United States extends its protection to the discoverer and his assigns solely to enable him to obtain the guano. The act of congress does not authorize or countenance the establishment of any form of governmental authority or local tribunal; it does not look to colonization or permanent settlement. It treats these islands, as in fact they are, as unsuited for permanent settlement by civilized communities, and as only temporarily occupied for the purpose of obtaining the guano. In order that while thus temporarily occupied by citizens of the United States the occupants may not be without some lawful means of suppressing disorders, the act provides that all offenses or crimes committed by persons who may land on any such island or in the waters adjacent thereto shall be deemed to have been committed on the high seas on board a mer-

chant vessel of the United States, and be punished according to the laws of the United States relating to such vessels and offenses on the high seas. It seems to us impossible to escape the conclusion that all that was intended was to afford governmental sanction and protection to the exercise of a commercial privilege, by which guano might be obtained and furnished for the use of agriculture in the United States; and it does not seem to us maintainable that, by extending this sort of protection for this purpose to an enterprise to be carried on upon small, uninhabitable coral islands in remote seas, the act of congress extended to them the common-law doctrines applicable to heritable estates in land in highly civilized communities, including the widow's right of dower in lands of her husband, disposed of by him in his life-time without her concurrence. Dower is always dependent upon the *lex loci rei sitæ*, and it is obvious that no system of law has ever been established on the island of Nevassa, except so far as, for the punishment of offenses by those temporarily occupying it, the maritime law with regard to offenses upon ships of the United States has been made applicable to it. No analogy, such as counsel have suggested, it seems to us, can properly be drawn applicable to these islands from the titles to lands in the northwest territorial domain of the United States, or the policy established with regard to them by the ordinance of 1787. That whole ordinance looked to the early settlement and ownership of the land by citizens of the United States, and to the establishment of permanent local governments by the persons who should become resident proprietors of the soil. In the case of these islands there is no ownership of the soil, except that of mere occupancy, and no patent or grant emanates from the United States to the occupant, nor anything approaching to it in character. The act of congress recognizes the assigns of the discoverer as succeeding to his rights, and by the act of April 2, 1872, (17 St. at Large, c. 81, p. 48,) the provisions of the original act are extended to the widow, heirs, executors, and administrators of the discoverer when he shall have died before perfecting his proof of discovery, or fully complying with the other provisions of the law. This legislation is far from establishing a right of dower in the widow. The widow, it is true, is mentioned; but by mentioning also executors and administrators the law negatives the idea of an estate in realty, and by mentioning all the persons who might by any law of succession be entitled to any property of a decedent, it merely provides that any such person being entitled would be recognized as standing in the place of the deceased discoverer. The use of the words, "widow, heirs, executors, or administrators," does not import that congress intended to legislate that the discoverer's right was to be regarded either as realty or personalty, but that whoever by the law of succession governing the decedent's estate might be entitled should be recognized. There is a proviso to this act of April 2, 1872, which is in these words: "Provided that nothing herein contained shall be held to impair any rights of discovery or any assignment by a discoverer heretofore recognized by the government of the United States." So that, if by mentioning the widow in the act of April 2, 1872, it could be maintained that any additional

right or estate was conceded to her, it could not aid the petitioner in this case, as it is alleged in the petition that the government did before the passage of that act recognize the assignment by Peter Duncan to Cooper, and declared his assignee to be entitled to the rights secured by the law. In our judgment the demurrer must be sustained, and the petition dismissed.